JUDGE CARTER

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

Joseph Pollak MD
"see attached"

Write the full name of each plaintiff.

19 CV 10803

_____CV_____
(Include case number if one has been
assigned)

-against-

Israel Polak
"see attached"

Write the full name of each defendant. If you need more
space, please write "see attached" in the space above and
attach an additional sheet of paper with the full list of
names. The names listed above must be identical to those
contained in Section II.

**COMPLAINT**

Do you want a jury trial?
☐ Yes   ☒ No

RECEIVED SDNY PRO SE OFFICE 2019 NOV 21 PM 3:05

---

**NOTICE**

The public can access electronic court files. For privacy and security reasons, papers filed
with the court should therefore *not* contain: an individual's full social security number or full
birth date; the full name of a person known to be a minor; or a complete financial account
number. A filing may include *only*: the last four digits of a social security number; the year of
an individual's birth; a minor's initials; and the last four digits of a financial account number.
See Federal Rule of Civil Procedure 5.2.

Rev. 1/9/17

## I. BASIS FOR JURISDICTION

Federal courts are courts of limited jurisdiction (limited power). Generally, only two types of cases can be heard in federal court: cases involving a federal question and cases involving diversity of citizenship of the parties. Under 28 U.S.C. § 1331, a case arising under the United States Constitution or federal laws or treaties is a federal question case. Under 28 U.S.C. § 1332, a case in which a citizen of one State sues a citizen of another State or nation, and the amount in controversy is more than $75,000, is a diversity case. In a diversity case, no defendant may be a citizen of the same State as any plaintiff.

What is the basis for federal-court jurisdiction in your case?

☑ **Federal Question**

☐ **Diversity of Citizenship**

### A. If you checked Federal Question

Which of your federal constitutional or federal statutory rights have been violated?

440 Civil rights Due Process

370 Fraud & Theft

850 Constitutionality of State law

470 RICO        290 All other Real Property

### B. If you checked Diversity of Citizenship

#### 1. Citizenship of the parties

Of what State is each party a citizen?

The plaintiff , _____ , is a citizen of the State of
                     (Plaintiff's name)

_____
(State in which the person resides and intends to remain.)

or, if not lawfully admitted for permanent residence in the United States, a citizen or subject of the foreign state of

_____ .

If more than one plaintiff is named in the complaint, attach additional pages providing information for each additional plaintiff.

If the defendant is an individual:

The defendant, _____, is a citizen of the State of

        (Defendant's name)

_____

or, if not lawfully admitted for permanent residence in the United States, a citizen or subject of the foreign state of

_____ .

If the defendant is a corporation:

The defendant, _____, is incorporated under the laws of

the State of _____

and has its principal place of business in the State of _____

or is incorporated under the laws of (foreign state) _____

and has its principal place of business in _____ .

If more than one defendant is named in the complaint, attach additional pages providing information for each additional defendant.

## II.  PARTIES

### A.  Plaintiff Information   *See attached*

Provide the following information for each plaintiff named in the complaint. Attach additional pages if needed.

| First Name | Middle Initial | Last Name |
|---|---|---|

Street Address

| County, City | State | Zip Code |
|---|---|---|

| Telephone Number | Email Address (if available) |
|---|---|

**List of Plaintiffs**

Joseph Pollak MD
290 West End Ave.,
New York, NY 10023
Tel no 201-401-5341
Email address Joepollak44@gmail.com

Michael Pollak MD
200 Old Palisade Rd.
Fort Lee New Jersey
Tel no. 201390-3427
Email address Mikepollak@yahoo.com

Emmanuel Pollak
10 Lori Lane
Monsey, NY 10 952
Tel. no. 201-741-5402
Email address  epol231@aol.com

\* Mailing Adress

323 Washington St

Hoboken N. J.

07030

**B.  Defendant Information**                    *see attached*

To the best of your ability, provide addresses where each defendant may be served. If the correct information is not provided, it could delay or prevent service of the complaint on the defendant. Make sure that the defendants listed below are the same as those listed in the caption. Attach additional pages if needed.

Defendant 1:

First Name                        Last Name

Current Job Title (or other identifying information)

Current Work Address (or other address where defendant may be served)

County, City                      State            Zip Code

Defendant 2:

First Name                        Last Name

Current Job Title (or other identifying information)

Current Work Address (or other address where defendant may be served)

County, City                      State            Zip Code

Defendant 3:

First Name                        Last Name

Current Job Title (or other identifying information)

Current Work Address (or other address where defendant may be served)

County, City                      State            Zip Code

## List of Defendants

Israel Polak
604 Burwick Ave.,
Teaneck, NJ  07666

Nechama Polak
 604 Break Ave.,
Teaneck, NJ   07666

Linda Harvey Esq
Greenberg and Dauber
One Gateway Center Suite 600 Newark, NJ 0710
Newark New Jersey

Jordan Friedman Esq
Chasan and Lamparello
300 Lighting Way,
Secaucus, NJ   07094

Marvin Lehman Esq
635 Westfield Avenue
Elizabeth New Jersey 07208


Rabbi Shlomo Weissmann
Beth Din  of America
305 7th Ave. 12th floor
New York, NY 10001

Rabbi Mark Dratch
Rabbinical Council of America
305 7th Ave. 12th floor
New York, NY 10001

Defendant 4:

_____
First Name                    Last Name

_____
Current Job Title (or other identifying information)

_____
Current Work Address (or other address where defendant may be served)

_____
County, City                  State          Zip Code

## III. STATEMENT OF CLAIM

Place(s) of occurrence:   *New York , N.Y.   Hudson County, New Jersey*

Date(s) of occurrence:   *Sept 2005 — Late 2016 / Early 2017*

## FACTS:

State here briefly the FACTS that support your case. Describe what happened, how you were harmed, and what each defendant personally did or failed to do that harmed you. Attach additional pages if needed.

*See Attached*

**INJURIES:**

If you were injured as a result of these actions, describe your injuries and what medical treatment, if any, you required and received.

*See attached*

**IV. RELIEF**

State briefly what money damages or other relief you want the court to order.

*See attached*

## V.  PLAINTIFF'S CERTIFICATION AND WARNINGS

By signing below, I certify to the best of my knowledge, information, and belief that: (1) the complaint is not being presented for an improper purpose (such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation); (2) the claims are supported by existing law or by a nonfrivolous argument to change existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Federal Rule of Civil Procedure 11.

I agree to notify the Clerk's Office in writing of any changes to my mailing address. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Each Plaintiff must sign and date the complaint. Attach additional pages if necessary. If seeking to proceed without prepayment of fees, each plaintiff must also submit an IFP application.

| | |
|---|---|
| _Nov. 5 2019_ | _Michael Pollak_ |
| Dated | Plaintiff's Signature |

| | | |
|---|---|---|
| _Michael_ | | _Pollak_ |
| First Name | Middle Initial | Last Name |

_200 old Palisades Rd._
Street Address

| | | |
|---|---|---|
| _Fort Lee_ | _New Jersey_ | |
| County, City | State | Zip Code |

| | |
|---|---|
| _201-390-3427_ | _Mike pollak@yahoo.com_ |
| Telephone Number | Email Address (if available) |

I have read the Pro Se (Nonprisoner) Consent to Receive Documents Electronically:
☐ Yes   ☐ No

   If you do consent to receive documents electronically, submit the completed form with your complaint. If you do not consent, please do not attach the form.

## V.  PLAINTIFF'S CERTIFICATION AND WARNINGS

By signing below, I certify to the best of my knowledge, information, and belief that: (1) the complaint is not being presented for an improper purpose (such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation); (2) the claims are supported by existing law or by a nonfrivolous argument to change existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Federal Rule of Civil Procedure 11.

I agree to notify the Clerk's Office in writing of any changes to my mailing address. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Each Plaintiff must sign and date the complaint. Attach additional pages if necessary. If seeking to proceed without prepayment of fees, each plaintiff must also submit an IFP application.

| | |
|---|---|
| *Nov. 5 2019* | *Jay Pollak* |
| Dated | Plaintiff's Signature |
| *JOSEPH* | *POLLAK* |
| First Name          Middle Initial | Last Name |

*290 WEST 6MO AV*
Street Address

| | | |
|---|---|---|
| *NEW YORK NY* | *NY* | *10023* |
| County, City | State | Zip Code |

| | |
|---|---|
| *201-401-5341* | *JOEPOLLAK 44 @ GMAIL.COM* |
| Telephone Number | Email Address (if available) |

I have read the Pro Se (Nonprisoner) Consent to Receive Documents Electronically:
☐ Yes   ☐ No

> If you do consent to receive documents electronically, submit the completed form with your complaint. If you do not consent, please do not attach the form.

## V. PLAINTIFF'S CERTIFICATION AND WARNINGS

By signing below, I certify to the best of my knowledge, information, and belief that: (1) the complaint is not being presented for an improper purpose (such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation); (2) the claims are supported by existing law or by a nonfrivolous argument to change existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Federal Rule of Civil Procedure 11.

I agree to notify the Clerk's Office in writing of any changes to my mailing address. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Each Plaintiff must sign and date the complaint. Attach additional pages if necessary. If seeking to proceed without prepayment of fees, each plaintiff must also submit an IFP application.

| | |
|---|---|
| _Nov, 5 2019_ | _Neidelholde_ |
| Dated | Plaintiff's Signature |
| _Manny_ | _Polak_ |
| First Name     Middle Initial | Last Name |
| _10 Lori Lane_ | |
| Street Address | |
| _Monsey_          _N.Y_ | _10952_ |
| County, City          State | Zip Code |
| _201-741-5402_ | _EPOL231@AOL.com_ |
| Telephone Number | Email Address (if available) |

I have read the Pro Se (Nonprisoner) Consent to Receive Documents Electronically:
☐ Yes  ☐ No

   If you do consent to receive documents electronically, submit the completed form with your complaint. If you do not consent, please do not attach the form.

Table of contents

Introduction

Statement of facts Joe and Mike

Statement of facts father

Claims

Relief

Damages

Entire controversy

Legal issues

Exhibits

We want to begin by stating that we are physicians and not attorneys and we are requesting that the court please take that into consideration when reviewing our papers

In our papers we are referred to as defendants even though we are currently the plaintiffs and our older brother Israel Pollak is referred to as the plaintiff even though he is currently the defendant. This is due to the fact that our older brother initiated the litigation in the Hudson County Chancery Division and in order to avoid confusion we have decided not to make any changes

In addition we are filing with our father Emmanuel Polak and he is simply referred to as "our father" in our papers

Finally our Statement of Facts, Claims, Relief and Damages are separated into Joseph / Michael Pollak and Emmanuel (Manny) Polak to help make the papers easier to understand. However, we are filing jointly as explained in our Entire Controversy Doctrine paper

Michael Pollak MD

Joseph Pollak MD

## Introduction

Our litigation involved a family owned commercial real estate property with income of $200,000 per year and with significant potential for development since it was zoned for a multi unit high-rise facing Manhattan. The property was owned by a general partnership consisting of our older brother who owned 50% and the two of us who owned the remaining 50%. We and our father had several meetings with an architect exploring options for development of the property but our older brother refused to get involved. Instead he initiated litigation to dissolve the partnership and force a sale of the property to a third-party with whom he had been negotiating without our knowledge.

After years of litigation there was a fraudulent transfer of our partnership interest to our older brother for a value of 1.5 million ( Our share was $750,000 ) After awarding our older brother $140,000 for his attorney fees and paying off the underlying $240,000 mortgage we were each given a check for $206,000 for our combined 50% share. The property is currently being developed with the construction of a 60-70 unit high-rise apartment building facing Manhattan which is worth at least $6-7 million dollars based on 2005 real estate values.

During the litigation our older brother extorted a document from our father which he then submitted as an exhibit in his final Motion to Purchase. After gaining control of the building he evicted our father from his office of 30 years and stole his personal possessions of 60 years including documents demonstrating he owed money to our father

## Corruption

We are two primary care physicians who have been in practice for many years in Hoboken New Jersey. During the last 15 years we have been fighting the corrupt legal system in New Jersey which extends from the Hudson County Chancery Division all the way up to the New Jersey Supreme Court During our litigation we were unable to get an attorney to properly represent us which is the politically correct way of stating that one attorney after another was influenced by the plaintiff In full view of the corrupt New Jersey judicial system

We approached numerous Law Enforcement Officials including the State Attorney General the FBI and the United State Attorney but all refused to get involved. In fact we approached a very high level Law Enforcement Official who informed us off the record that everybody knows that Hudson County is corrupt. In addition, together with our father, we approached the Rabbinical Council of America and Bet Din of America in New York City (Jewish religious court) and attempted for many years to have them get involved but were unsuccessful. In the end the rabbis became involved in fraudulent activity as well

After the New Jersey Supreme Court dismissed our appeal in 2013 we approached several New York City law firms to represent us. All of these firms were initially very enthusiastic but eventually refused to proceed with our case citing various legal reasons. There are two possibilities :One is that even though we experienced corruption in New Jersey these attorneys believed that there was no legal remedy available to us The other possibility is that these firms

were also somehow concerned about or influenced by the very same forces that existed in our litigation

Keeping in mind that the latter is a very real possibility and that no attorney would represent us we have decided to file our papers pro se with the hope that perhaps there is Judge or jury who will be able to remedy the injustice that occurred to us in New Jersey and New York. In addition during the last 15 years we have also come to realize that no attorney will accurately describe the corruption we experienced because that would entail disparaging other attorneys and judges We on the other hand are not be bound by these concerns and will describe clearly all the fraud , theft and civil rights violations committed during our litigation.

Finally we also need to correct the record that currently exists in Hudson County. This Record which slanders our father and the two of us does not contain our opposition papers( to the above mentioned illegal transfer of the 231 property) since they were illegally purged by the Hudson County Chancery Division Our older brother and his wife have for years have been able to refer to these court documents from Hudson County which portray us unfavorably

The specifics of our case can be found in the documents we have submitted but the story can best be summarized in a few lines The plaintiff and his wife, together with their attorney, sued us in the corrupt Hudson County Chancery Division where after threatening,intimidating, harassing and slandering us they were able to steal a multi million dollar property in broad daylight. They were then able to illegally evict our than 92-year-old father, the original owner and purchaser of the building, from his office of 35 years

<u>Statement of Facts for Joseph and Michael Pollak</u>

<u>Background</u>

The litigation concerned a dispute involving a profitable commercial real estate property in Weehawken New Jersey. The property was owned by the 231 Hackensack Plank Associates which was a partnership consisting of the plaintiff, Israel Polak, who owned 50% and the two of us, the defendants, Joseph Pollak M.D. and Michael Pollak M.D., who owned the remaining 50% which we purchased from our father, Manny Polak. The dispute began when the plaintiff, who was managing the property, withheld money from the partnership and refused to provide partnership financial statements

I.      <u>2005-2009 Events</u>

<u>Onset of Litigation</u>

The plaintiff filed for dissolution of the partnership (based on fraudulent claims) and sale of the property to a well-known developer, with whom he had been negotiating without our knowledge. We opposed the sale fearing an insider's deal and preferred to maintain the property as a profitable commercial rental with the potential of developing the property since the property was zoned for high rise development.  The partnership agreement required a 2/3 vote for dissolution and only allowed a partner to sell his 50%. However, this partnership agreement was never discussed in court during all the years of our litigation because our attorneys believed that the partnership agreement could not be enforced.

Soon after the onset of the litigation we agreed to a settlement where the property would be marketed and sold because (1) we relied on our attorney's above mentioned advice (2) we feared an auction or inside deal with the Plaintiff's new buyer and (3) we were attempting to ensure a fair process in the sale of the property. However, the settlement failed when the plaintiff and we were unable to agree on a buyer and the court subsequently initiated a new process whereby a court agent was appointed to sell the property.

During the next two years the court and court agent were unable to sell the property to multiple potential buyers, including the two of us and our father, because the plaintiff refused to provide an environmental review and allowed the building to remain vacant precluding any financing by a perspective buyer.  However, the court faulted us and our father for not closing while ignoring our repeated requests for a factual hearing and third party management of the property.  Eventually, the court issued a court order that we could no longer purchase the property.

<u>Motion for Either Party to Purchase and Withholding of Information from Defendants</u>

In June 2009, the Plaintiff filed a Motion for Either Party to Purchase which included

a) a 30 day closing period
b) no environmental or financial contingencies (<u>all cash</u>)
c) assumption of environmental responsibility and the underlying mortgage
d) no closing in escrow and

We responded to the court that we could not make a decision because the court agent, the Plaintiff, and the Plaintiff's attorney were withholding important information (e.g. environmental studies required for a mortgage, partnership books/financial documents and tenant status.) More importantly, the environmental review was being done by the plaintiff's environmental firm, ESA, which refused to communicate with us or to provide us with any documents during the five years prior to this offer.

Court Ruling/ Court Order 2009

Despite voicing these concerns on four different occasions during the September 2009 court hearings, including a letter to the court requesting it recuse itself, the court ruled that the plaintiff could purchase our partnership interest "pursuant to his offer". The court then ordered that the property be sold to the Plaintiff for $1.5 million and awarded the plaintiff his attorney fees although judgment on the amount awarded was "reserved". A purchase agreement was drafted but it did not include any of the above mentioned terms in the Motion for Either Party to Purchase or a full accounting and a 1031. Because of these omissions, we had our attorney object in writing to the court agent and the court but neither responded or even acknowledged this letter. However, despite all of the above favorable conditions working in favor of the plaintiff, and after multiple closing dates set by the court agent, the plaintiff never closed in 2009. Our legal costs were in the tens of thousands of dollars yet there was no follow up or explanation given by the court agent or plaintiff's attorney.

II.   Fraudulent Transfer, Theft of Property and Failure to Enforce Court Order

On November 16, 2010, after 14 months of inactivity in the litigation, the Court Appointed Agent together with the Plaintiff and Plaintiff's attorney illegally transferred our partnership interests in the disputed property on a completely different set of terms then approved by the court. The plaintiff was allowed to:

a) purchase the property without assuming environmental responsibility.
b) close in 15 months instead of the 30 day closing period
c) obtain a mortgage
d) have the partnership pay off the underlying mortgage
e) have a closing in escrow.
f) conduct further environmental work during those 14 months and
g) rent out vacant space.

This transfer was done while we were out of the country and without notifying our attorney or us prior to doing so. The Purchase Agreement did not include any of the previously mentioned conditions by the Motion to Purchase, and therefore, the transfer was contrary to the Plaintiff's 2009 Motion to Purchase, contrary to the Court Ruling of September 15, 2009 ("pursuant to his offer"), and contrary to the Court having stated "I offered the Defendants the same deal your client (Plaintiff) was willing to enter into". In addition, the court agent and the plaintiff's attorney allowed the plaintiff to "transfer shares in the partnership" without "selling the property", falsely stating first in the purchase agreement and then in the filing of a deed that the court order was to transfer shares ( The court did rule as mentioned above that the plaintive could transfer the partnership shares but only "pursuant to his offer" i.e. 30 days all cash etc.). This transfer provided the plaintiff significant tax benefits (which were not given to the two of us) and was done without an accounting, review of assets and liabilities or 1031 as per the original settlement. The latter, a tax exchange, had no effect on the plaintiff but never the less was denied by the court.

III.     Due Process Denied and Fraudulent Concealment

Court Agent Withholds Closing File and Disbursements / First Purging of Record

This illegal transfer, a well-coordinated and long planned action between the court agent, the plaintiff's attorney and the plaintiff, occurred one month after the court records from 2005 - 2010 were "destroyed" and while we were outside the country. The court agent never provided any closing documents or his file (despite repeated requests) and did not disburse money due to us for almost two years. (This prevented us from purchasing our medical office building which was for sale during this period of time.)

Defendants' Attorney Disappears

Furthermore, our attorney of record disappeared during and after the transfer and refused to represent us despite a) being the attorney of record b) there not having been any withdrawal or substitution of attorney and c) never returning our $5000 retainer fee. Subsequently no other attorney would represent us until they understood why our attorney had disappeared

Defendants File Opposition Papers Contesting Illegal Transfer

In July 2011 the court agent and the plaintiff's attorney filed motions for attorney fees and we filed opposition papers which expressed our concerns about

a) the transfer of the property under different terms than the court order
b) exhibit H in Plaintiff's motion (a document obtained under duress)
c) the conspiracy between the court agent and the plaintiff attorney
d) and our attorney not representing us

We, and not our attorney, filed these opposition papers because, as mentioned previously, our attorney of record disappeared without a withdrawal or substitution of attorney and no other attorney would represent us until it was clear why he had disappeared.  Most importantly we asked the court to direct our attorney to represent us as per his fiduciary responsibility.

New Judge and Opposition Papers Purged (Second Purging of Record)

From July 2011 to May 2012 there were multiple adjournments and at no time did the Judge have a hearing on the transfer of the property.  In early 2012 the Judge (Judge Oliveri) who presided over our case from its inception retired and returned to his previous law firm and a new Judge (Judge Velasquez) was assigned our case.  On May 18th our above mentioned opposition papers were purged (second purging of Record) with a pending motion scheduled on May 31, 2012. This was done without the Judge's or our knowledge

## May 31, 2012 Court Hearing

On May 31, 2012 there was a court hearing before a new Judge and both the court agent and plaintiff's attorney appeared together in Court.  We were not represented by our attorney who failed to appear in court despite there not being a withdrawal or substitution of attorney. In addition, we could not appear in court because the court was hostile towards us, the court agent had previously threatened us with arrest and we were concerned that we risked being arrested for contempt of court. As mentioned above, both we and the Judge were not aware at this time that the opposition papers had been purged. We only learned about this purging a year later from the Clerk of the Superior Court (see below). Judge Velasquez, on the other hand, never became aware of this purging.

## July 31 2012 Final Court Order Not Served on Defendants but the Defendants File an Appeal before the Appellate Division Based on the Court Order Viewed on New Jersey Public Access

On July 31, 2012 the Court issued its final court order awarding attorneys' fees three years after the 2009 court order where the attorney fees had been reserved.  However, the order and the follow-up amended order were both never served on us as required by the Rules of the Court (plaintiff claimed "lost in mail").  We only became aware of the final court order four weeks later when viewing New Jersey Public Access. We then filed a pro se Notice of Appeal in the Appellate Division in September 2012.  We filed this appeal pro se because as mentioned previously no other attorney would represent us until they understood why our attorney had disappeared.  We were not concerned about filing pro se in the Appellate Division because we had only been threatened with arrest in the Chancery Division.

## Acting Court Administrator/ Clerk of Superior Court Letters Regarding Both Purging's of the Record-

In November 2012 the Acting Administrator of the Court responded in writing to our concerns about the first purging of the records in 2010 and to our attorney's disappearance.  He assured us that the file still contained all essential documents, which was untrue.  In April 2013 the Clerk of the Superior Court, in response to our further concerns, informed us that the court papers were purged a <u>second time</u> prior to the May 2012 hearing something which the Acting Administrator had not mentioned in his Nov 2012 letter. As mentioned previously, this second purging of the records occurred two weeks prior to the pending May 31, 2012 hearing. This was the first time we became aware of this second purging but did not fully understand the ramifications and legal significance until years later.

Both the Clerk of the Superior Court and the Acting Administrator refused to further respond to multiple letters as to and who requested the second purging of the papers in May 2012 and why this request was made.  In addition, the Acting Court Administrator never gave an explanation as to why the court proceeded without our having any attorney representation and why the final court orders were never served on us.

<u>Withholding of Transcripts of May 31, 2012 Hearing (Which Indicate Opposition Papers Purged) and Subsequent Dismissal of Appeal by Appellate Division</u> -

During the years 2012 to 2013 the Office of Court Reporters withheld from us transcripts from several hearings necessary for perfecting the record (for the Appellate Division) including the above mentioned crucial May 31, 2012 hearing. Nevertheless, the Appellate Division issued a scheduling order without a complete set of transcripts as required by the Rules of the Court. Subsequently, the case manager advised us to file a Motion to Compel the lower court to provide the records and assured us that a new scheduling order would be issued after obtaining the complete transcripts.

In July of 2013 the Office of Court Reporters finally provided the transcripts of the May 2012 hearing which they had withheld for almost a year. The transcripts indicated that the plaintiff's and court agent's motions had been preserved while our October 2010 opposition papers had been purged. Both the court agent and plaintiff's attorney, despite full knowledge of our opposition papers, withheld this information and misled the new Judge that there were no opposition papers. Furthermore, they never informed us, as instructed by the Court, that we "needed to submit (a response) in writing". Most importantly, the plaintiff's attorney informed the court (with the court agent present) that we were Prose, despite full knowledge of our previously filed opposition papers stating that we were not Prose and that we actually had an attorney representing us.

Finally, the transcripts once again confirmed that our papers had been purged but more importantly that the plaintiff's papers had not been purged and that Judge Velasquez (the new presiding Judge) had not been aware of this purging of our opposition papers. However, we did not appreciate until years later that even though Judge Velasquez issued the final court order it was based on fraudulent conduct by the plaintiff, plaintiff's attorney and court agent.

We included all this information in our communications with the Appellate Division when we filed our Motion to Compel however the Appellate Division denied our motion and then dismissed our appeal for failing to comply with the scheduling order.

<u>The District Ethics Committee and the Disciplinary Review Board</u> –

We filed a grievance with the DEC and DRB that our attorney had disappeared but they both responded with a blatant and outrageous lie that we had "dismissed our attorney" during a phone call (and not in writing). This was despite overwhelming evidence otherwise including a signed affidavit by the two of us denying this dismissal. In fact, our attorney himself in his response to the DEC never stated that we dismissed him. Furthermore, the DRB then ruled that because the attorney was allegedly "dismissed" he did not have to comply with the Rules of the Court requiring a withdrawal or substitution of attorney.

<u>Advisory Committee on Judicial Conduct</u> –

Judge Olivieri, the initial Judge in our case also presided at the same time over another case where a complaint was filed against him with the Advisory Committee on Judicial Conduct. As a result of that grievance the Judge was forced to recuse himself and subsequently would retire in early 2012 to his previous law firm. The same Judicial Advisory Committee dismissed our complaint against Judge

Olivieri with the plaintiff's attorney (as a member of the committee) participating in the decision despite our request that he recuse himself.

IV   Discussion

It is our belief that the court agent acted in collusion with the Plaintiff's attorney and Plaintiff to repeatedly misrepresent facts, consistently withhold information from us, harass us, deprive us of our due rights, allow the Plaintiff complete control of the disputed 231 property and finally, to transfer our interests without notifying us or our attorney.   The court agent and plaintiff's attorney then conspired to prevent us from contesting this illegal transfer by withholding information and misleading the Court into believing we did not file opposition papers contesting the transfer and that we were Prose even though we had an attorney representing us.

The initial Judge had a judicial conflict of interest with the Court Agent, who is an associate from a former and now current partner's law firm and was therefore unable to objectively address our concerns about the Court Agent's actions. The court repeatedly refused our requests for a factual hearing and for management of the property by a third party.  However, despite the conflict of interest with the Court Agent, the Court refused to recuse itself.  In addition, this former and now current partner's law firm was paid $200,000 for the court agent fees and did not disburse $600,000 (there was a closing in escrow) for two years after the transfer of the partnership interests.

In the end, the property was transferred to the Plaintiff for a value $1.5 million, a third of its 2005 court appraised value of $3.8 million and a third of the 2005 third party purchase offer of 4 million. Our 50% share was $750,000. In 2012, after awarding the Plaintiff $140,000 of his attorney fees and paying off the underlying $240,000 mortgage (not included in the court order), we were each given a check for $206,000 for our combined 50% share.  We deposited the checks 6 months later after informing the court agent that we still reserve the right to appeal the transfer.  Despite numerous requests, to this day we have never been given the closing documents or the court agent file.  The current property is currently being developed for 60-70 residential units (6-7 million dollars 2005 market value and a much greater value today). This development of the property is exactly what we had proposed to the plaintiff prior to his initiating litigation in 2005 to force a sale of the property to a third party.

We believe that the Rules of the Court and the Rules of Professional Conduct were violated, and the Acting Court Administrator failed to enforce those rules.  In addition, we believe our civil rights to due process were denied.  However, more importantly, we believe there may have been illegal activity including a conspiracy to commit fraud and theft involving the court agent, plaintiff, and plaintiff's attorney.  In addition, we believe the court agent, although he may have "qualified immunity", committed malpractice and participated in fraudulent activity while representing the partnership, which included the defendants.

Statement of Facts  Manny Polak

Backround

In 1985 or older brother and our father purchased the 231 Hackensack Plank Property (mainly with capital contributions from our father ). They formed 231 Hackensack Plank Associates and individually signed a general partnership agreement. In the intervening years the two of us purchased our fathers 50% share of the partnership and the property. In 1999 we all agreed to allow our father to remain in his office space without paying rent for as long as he desired. This agreement was intended to be partial payment for our fathers capital outlay's in purchasing the building

In addition our father owned Geographia Map Company,  a publishing company which he started in the 1950s. In 1987 our father gifted to our older brother 50% of Geographia.  Then In 1988 our brother bought our father's remaining 50% share of the company for $200,000 and a few months later sold it to Rand McNally for $2 million. The profits were not shared with our father. We were not aware of this until 2005 when he attempted to do the same thing to us by attempting to buy our partnership interest for $1 million while at the same time having an offer from a third-party for $2.6 million

Extortion and Illegal Eviction

We approached the Rabbinical Council of America (RCA ) and the Beth Din Of America (BD) several years ago to help in our dispute with our older brother because we were concerned about possible corruption in our litigation in Hudson County .Rabbi Wiseman the director of the Beth Din refused to get involved even though our brother who is an Orthodox rabbi had failed to initially go to the BD as required by Jewish Law

Instead Rabbi Weissmann ,without our knowledge , helped our older brother draft a document that our father was then coerced to sign under duress ( with the threat of public humilation) This document was later used against us when it was submitted as an exhibit (exhibit H )in our litigation with our older brother. Rabbi Weissmann initially denied having knowledge about this document but after we produced emails that clearly demonstrated his involvement he refused to further communicate with us

A number of years later our father submitted a claim against our older brother to the Beth Din . The claim involved money owed to our father and additional issues pertaining to tenant rights including our older brother evicting him from his office of 30 years. Rabbi Wiseman refused to recuse himself despite a glaring conflict of interest due to his previous involvement. Instead he took the position that the matter was previously adjudicated in our litigation and therefore refused to accept the case

In April 2014 while our father was at a wedding outside the country our older brother ( landlord ) entered our father's office removed his possessions and has refused to return them despite repeated requests. In addition he changed the locks to our fathers office thereby evicting him from his office of 30 years

We then approached Rabbi Golden who at the time was the  president of the RCA. However he refused to  follow up on our concerns and instead covered up Rabbi Wisemans inappropriate actions


Fraud

More recently we filed a complaint regarding the above with the Rabbinical Council of America. However, Rabbi Dratch the Executive Vice President fraudulently misled us into believing the Executive Committee had made a decision on a request to convene a Vaad (a committee responsible for investigating Rabbis). In fact, a complaint was never submitted to the Executive Committee (see below). contrary to the rules of the RCA


Correspondence with the RCA

On September 29, 2016, we requested from the Executive Committee of the RCA and Rabbi Dratch that they open an investigation into Rabbi Golden and Rabbi Wiseman.

On November 9, 2016, Rabbi Dratch responded that " according to our Constitution a Vaad must be convened by the Executive Committee of the RCA. The next meeting of the Executive Committee is scheduled for November 29th."

On November 16, 2016, we asked Rabbi Dratch specific questions regarding how the decision will be made by the Executive Committee, but he never responded.

On December 22, 2016, we inquired about our November 16, 2016 email and about the Executive Committee November 29, 2016 meeting. Rabbi Dratch responded, "Upon consideration of your request and evaluation of the concerns you raise, the RCA will not be pursuing Vaad proceedings."

One of the rabbis of the Executive Committee subsequently confirmed to us by email that he was not aware of our request to convene a Vaad, and that Rabbi Dratch,contrary to the rules of the RCA, had decided not to forward our request to the Executive Committee.

It remains unclear why Rabbi Dratch misled us into believing that the Executive Committee had decided not to pursue Vaad proceedings. Furthermore it remains unclear why he did not adhere to the RCA Constitution, which states that the Executive Committee has to convene proceedings by the Vaad (as Rabbi Dratch himself stated in his November 9, 2016 email).

<u>Claims Joseph and Michael</u>

1. Fraud and Theft —

    a. Conspiracy by the plaintiff, plaintiff attorney and court agent to commit fraud and theft by
        1. Illegally transferring the property on a completely different set of terms then the court directed.
        2. Drafting a fraudulent purchase agreement and then filing a fraudulent deed

    b-- Conspiracy by the plaintiff to commit fraud and theft by
        1. Falsifying evidence and submitting an exhibit which was obtained under duress as part of his final Motion to Purchase

2. Due Process Denied and Civil Right Violation by the plaintiff, plaintiff attorney and court agent
    a. Denied opportunity to present evidence regarding the transfer of the property and why the proposed action should not be taken
    b. Denied an opportunity to be represented by counsel when it was misrepresented that we were Prose despite no formal withdrawal or substitution by our attorney
    c. Denied proper notification of a proposed action when they fraudulently transferred the property without notifying us prior to the transfer

3. Fraudulent Concealment / Spoilation of evidence ( cover-up)
    The plaintiff, plaintiff attorney and court agent were  involved in misleading the court and covering up the purging of the opposition papers

4. Failure to Enforce Judgement - Plaintiff, plaintiff attorney and court agent transferred the property contrary to court directive

5. Failure of plaintiff court agent and accountant to provide accounting, review of assets and liabilities and closing documents including file from the court agent

6. Malpractice
    Court agent who represented partnership misrepresented the defendants
    Defendant's attorney ignored fiduciary responsibility to represent client

7. Slander - Final court order slandered defendants
    Court agent, plaintiff attorney and plaintiff fraudulently stated our father did not have a mortgage.

Additional Federal questions

1. Constitutionality of State Law -
   New Jersey ethics committee (under the New Jersey state Supreme Court) stated that if an
   attorney claims he was discharged during a phone call (without written communications) he can
   claim he was dismissed.  He does not need a withdrawal or substitution of attorney

2. Federal Water Pollution Act –
   Plaintiff, plaintiff attorney and court agent fraudulently withheld environmental information and
   there may have been a violation of the act

3. Tax Fraud
   Plaintiff fraudulently stated there was a transfer of partnership shares instead of a sale there by
   avoiding significant tax implications ([Plaintiff would never have closed on property if he was
   required as we were to pay taxes)

4. Rico-
   Plaintiff, plaintiff attorney and court agent hijacked and controlled the partnership
   ("enterprise") for years. This enterprise was involved in racketeering including threats
   Intimidation, harassment, fraud, extortion and theft

5. ( Freedom of information act or ) NJ Open Public Record Act -  Right to access court records
   and administrative records
      Clerk of Superior Court and Administrative Court Director refused to provide
      documents clarifying the purging of the records

<u>Claims  Manny Polak</u>

1   Fraud and Theft --

    a. Conspiracy by the plaintiff, plaintiff attorney and court agent to commit fraud and theft by
        1.   Stating our father did not have a mortgage leading to the forfeiture and theft of his
            $75,000 deposit

    b-- Conspiracy by the plaintiff to commit fraud and theft by
        1. Falsifying evidence and submitting an exhibit which was obtained under duress as part of his
           final Motion to Purchase
        2. Removing personal belongings of our father and refusing to return them
        3. Concealing insider information regarding the sale of Geographia to Rand Mcnally and not
          sharing the $2 million profit

    c- Conspiracy by Rabbi Wiessmann and Robert Dratch to commit fraud by
        1. Rabbi Wiessmann participating in the obtaining of exhibit H under duress
        2. Rabbi Dratch falsely stating that a request for an investigation had been reviewed by the
          Executive Committee

2.   Extortion
    Plaintive obtained exhibit H under duress and then submitted in his 2009 Motion to Purchase
    Rabbi Wiessmann participated in the obtaining of exhibit H under duress

3.   Unlawful Eviction- Father illegally evicted from office of 35 years

<u>Relief  Joseph and Michael</u>

1. Equitable action
    The plaintiff plaintiffs attorney court agent and partnership accountant should provide
       information regarding the fraudulent transfer
    The plaintiff should provide partnership financial documents, accounting and review of
       assets and liabilities at closing
    The court agent should provide his entire file including closing documents
    The plaintiff should provide all information regarding reimbursement for environmental
       remediation by the DEP and by CNA insurance

2. Void Transfer of the Property
    The transfer was fraudulently done on a completely different set of terms then the court
       directed.

3. Place Lien on Property
    There was a fraudulent filing of a deed stating the court order was for a "transfer". However
       the court order mandated a sale and not a transfer

4. Vacate the final court order and opinion-
    Defendants opposition papers were illegally purged prior to the final hearing and court
       order.

5. Vacate the 2009 court order-
    Withholding of information from the defendants

6. Demand the Hudson County Record Department provide all documents pertaining to the
    illegal purging of our opposition papers

7. Demand from the NJ State Records Department all documents pertaining to the purging of
    our opposition papers

8. Demand response from Administrative Court Director and Clerk of Superior Court of the
    why our papers were purged and who purged them.

9. Demand response from Judicial Advisory Committee why they allowed Judge Olivieri to
    continue presiding in our case while at the same time they forced him to recuse himself
    from another case

10. Demand response from the Ethics Committee and DRB why they fraudulently stated we
    dismissed our attorney during a phone call. Furthermore, even if we had dismissed him
    why did he not have to comply with the Rules of the Court to formally withdraw

<u>Relief Manny Polak</u>

1. Personnel possessions returned

2. Rand McNally should provide all closing documents with Geographia

3. RCA and Bet Din of America should provide their entire file

4. The Division of Elder Abuse should intervene and aid our father

<u>Damages - Joseph and Michael Pollak</u>

| | |
|---|---|
| Lost equity as result of sale of property at a third of its value | 1.5 - 2.5 million |
| Lost potential profit in developing property (zoned for high rise) | 1-2 million |
| Lost tenant rental income (to partnership) not allowed by court agent | (200k x 10 year) ½=1 m |
| Lost income from being prevented from opening a second location for medical practice | 400k x 10 yrs  = 4 mil |
| Defendants' attorney fees | 300k |
| Plaintiff's attorney's fees paid by Defendants | 140k |
| Capital outlays for initial purchase of building | 350k |
| Court agent fees paid by partnership | 200k ½ = 100k |
| Environmental clean-up costs paid by partnership | 200k ½ = 100k |
| Interest on the Defendants' money (600K) held in escrow for two years | 30k @ 10% / yr x 2 |
| Mortgage pay off (contrary to court order) | (1/2 of 140K ) 70K |

<u>Damages Joseph and Michael to be determined</u>

Full accounting of partnership since 1999- partnership books withheld for 10  years

Full accounting, including review of assets/liabilities of sale of the Defendants' partnership interest

Full accounting of any environmental fees reimbursed by DEP and CAN

Partnership income 2010 never distributed

Punitive damages

Pain and Suffering damages

Fraud  triple damages

Damages Manny Polak

Theft of the deposit                                  $75,000


Damage Manny Polak to be determined

Discarding of father's personal belongings

Lost income from illegal eviction from his office

Compensation for his initial capital contributions in purchasing property

Punitive damages

Pain and suffering damages

Fraud triple damages

Entire controversy

In 2005 we approached our older brother and proposed developing the previously mentioned 231 real estate property with our father. Instead our brother, initiated litigation to force a sale to third-party. During the litigation our father attempted to buy the property to help resolve the dispute but was blocked by the plaintiff, plaintiff attorney and court agent who misrepresented that he did not have a mortgage

In 2008 our father states he was forced to sign a financial document under duress at Rabbi Weismann's office at the Beth Din of America a rabbinical court in New York City (Our father would later disavow the document). This document absolved are older brother the plaintiff from any financial obligations to our father Including capital contributions for the purchase of the 231 building or any wrongdoing in the sale of Geographia to Rand McNally (see Statement of Facts Manny Polak)

This financial document was then submitted by the plaintiff as exhibit H in the 231 litigation to support his 2009 Motion to Purchase. That motion was granted by the court and directly resulted in the plaintiff a) illegally transferring the property and b) ultimately evicting our father from his office of 35 years

We and our father attempted for years to have the RCA intervene and investigate Ex. H This ended when Rabbi Drach Executive Vice President of the RCA fraudulently stated that the Executive Committee of the RCA had decided not to pursue an investigation when in fact he had never presented the information to the committee.

As a result, after years of litigation and dealings with the RCA, we were prevented from developing the property and instead the two of us were each paid $206,000 for our shares. The property is currently been developed for 60 to 70 unit high rise apartment building facing Manhattan having a value of $6-7 million dollars based on 2005 real estate values

The Entire Controversy Doctrine Rule 4.5 -states that all parties with claims regarding the same transaction or event must litigate the matter in one comprehensive lawsuit.

In light of the above facts the three of us are initialing this comprehensive lawsuit Even though all the documents regarding our father have been written by the two of us he is aware of the content and has signed the complaint. Our father is 97 years old but is competent and has full decision making capacity

Legal Issues

I Federal Issue

We are initiating an independent action attacking the final state court order on the grounds that there was fraudulent conduct in the state court.  We believe the fraud was extrinsic and a collateral matter which was not previously an issue in the state court.

Furthermore this fraudulent conduct was by the court appointed agent who in his capacity as a representative of the Judge in the Hudson County Chancery Division was a state official

Finally we believe our claims give rise to multiple federal question including most importantly due process ( civil rights) and therefore should be heard in a federal court

II Statute of Limitations

One of our claims is Failure to Enforce a Judgment .The Court Agent allowed the property to be sold on a completely different set of terms then that ordered by the court This claim has a statute of limitations of 20 years

Our main claim is Fraud and Theft. This claim is based on the events surrounding the fraudulent transfer 2010 and the subsequent cover up at the May 2012 hearing extending through our appeal in November 2013.  Fraud has a six-year statute of limitations which begins to run on the date of the act/omission or date on which the act/omission reasonably should have been discovered.

Although the fraudulent transfer was in 2010 we only became aware of the courts purging of our documents in 2013.  Furthermore it is only in 2016 after meeting with attorneys and reviewing many of the documents, transcripts, events and Rules of Court did we discover that the purging of the record was illegal and that the Court Agent Plaintiff and Plaintiff attorney had participated in fraudulent concealment at the May 31, 2012 hearing. These actions prevented us from having a procedural hearing and due process on our contesting the transfer of the property.

We are still not sure to this day of all the events surrounding the May 31, 2012 hearing. The transcripts of the hearing are confusing and difficult to fully understand and the Clerk of the Superior Court and the Acting Court Administrator refused to provide further information explaining the purging of the record

In addition our older brother evicted our father from his office of 30 years in 2014 by using a fraudulently obtained document. This document was obtained from our father under duress and then submitted by our older brother as Exhibit H to support his final Motion to Purchase.

Furthermore Rabbi Dratch committed fraud in November 2016 when he fraudulently stated that the Executive Committee had reviewed our request for an investigation.

Finally we only recently appreciated the true economic harm (damages) incurred with the development of the property for 60- 70 units valued at several million dollars. Developing the property is what we had proposed prior to the plaintiff initiating litigation.

III Venue

We are filing our complaint In New York because a substantial amount of the events involving Ex. H (see Entire Controversy document ) occurred in New York City at the Rabbinical Council of America. In addition, we are filing here because of our fear that we will not receive due process in the state of New Jersey.

Ex. H                                    ( Ex. 1 )

1. I reached an agreement with Tuly in 5/88 to sell my remaining 50% shares in GEO. The meeting took place in the Famous Restaurant and was held in an amicable environment and business like manner.
   a. The agreed upon price was a fair amount and accepted by both parties.
   b. The payment terms were met as agreed upon except for one lump sum acceleration of payment ($131,999) which was made on 1/4/89.
2. There are no monies due to either of the original partners of 231 Plank Associates resulting from the 1985 purchase and renovation of the property in Weehawken. This is based on the information from internal records of the time, and from the extensive Accounting Review that was distributed to all of the family members in 6/07.
3. I received a copy of the 231 Federal Tax Return for every year that I was a Partner (1985-1999) in 231 Plank associates. The Returns included a Balance Sheet and Profit & Loss Statement for each year, and therefore I had full knowledge of the financial information of the Partnership. As shown on the returns, there was a Net Loss of Operations for almost all of those years.

I understand that some facts related to the above three situations have been communicated to others in an incomplete manner. This was due to misunderstanding and misinformation that I deeply regret.

( Ex. 2 )

Jan. 26, 2011

To whom it may concern,

It has just come to my attention that a statement dated 7/17/ 2008 signed by me was submitted to the court in a case involving my three sons
I declare herewith that the statement was signed under duress and does not represent the truth